UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Steven Evans,

Petitioner,

vs. REPORT AND RECOMMENDATION

Constance Reese,

Respondent. Civ. No. 01-532 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 21st day of June, 2001.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus. See, Title 28 U.S.C. §2241. The Petitioner has appeared pro se, and the Respondent has appeared by Lizabeth McKibben, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for Writ of Habeas Corpus be denied.

## II. Factual and Procedural History

The Petitioner is currently serving a 180-month prison term at the Federal Medical Center in Rochester, Minnesota. He was sentenced, on September 30, 1994, by the United States District Court

FILED JUN 21 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

for the District of North Dakota, after having been convicted of being a Felon in Possession of Firearms by a Person who has Three Previous Violent Felony Convictions, in violation of Title 18 U.S.C. §922(g)(1), 924(a)(2), and §924(e)(1). He began to serve his Federal sentence on April 19, 1995.

The Petitioner's Federal sentence computation began on September 30, 1994 -- the day on which his initial Federal sentence was imposed. See, Attachment A to Decl. of Ernie Frie. In calculating his sentence, he received prior custody credit from April 20, 1993, which was the date of his Federal arrest, to October 17, 1993, which was the day prior to the imposition of a North Dakota State sentence, for a total of 181 days.[1] See, Attachment F to Decl. of Ernie Frie. The Petitioner did not receive credit for the period of time from October 17, 1993, through September 30, 1994, while he was in State custody, because the time in custody was credited to his State sentence. See, Title 18 U.S.C. §3585(b).

In addition to the credit of 181 days, on August 26, 1998, the Petitioner's Federal sentence was reduced to time served plus 48 months, to commence on August 1, 1998, as a result of a Petition he filed under Section 2255. See, Attachment B to Decl. of Ernie

[1]This credit was awarded in accordance with Title 18 U.S.C. §3585(b), for time spent in official detention prior to the commencement of a sentence, which had not been credited toward another sentence.

Frie. Consequently, on October 5, 2000, the Bureau of Prisons ("BOP") recalculated the Petitioner's sentence, to accommodate the change made in August of 1998, and awarded him 1401 days credit on his Federal sentence. See, Attachment F to Decl. of Ernie Frie. This figure was calculated by determining the time between the day on which his initial Federal sentence was imposed -- September 30, 1994 -- to the day before the corrected/reduced Federal sentence commenced -- July 31, 1998. Altogether, the Petitioner received a total award of 1582 days credit toward his initial Federal sentence. Id. According to the BOP, his projected release date is July 14, 2001.[2] Id.

---

[2]The Petitioner has submitted an exhibit, dated September 13, 2000, which shows his projected release date as January 28, 2001. See, Attachment to Petitioner's Memorandum of Fact and Law in Support of Petition for Writ of Habeas Corpus ("Petitioner's Memorandum"). The Bureau of Prisons ("BOP") contends that the Petitioner's projection was in error, however, and was corrected in the recalculation of October 5, 2000. See, Attachment F to Decl. of Ernie Frie.

After this asserted error, the BOP and, apparently, the Petitioner, sought a clarification from the Sentencing Court as to the total term of the Petitioner's Federal sentence. See, Attachment G to Decl. of Ernie Frie. On January 5, 2001, the United States District Court for the District of North Dakota, the Honorable Richard Goldberg presiding, responded to that inquiry by stating that he had "been in touch with the warden and Bureau of Prison authorities relating to your release date" and advised that with the resentencing, "you will serve a total of seven years and two months." See, Attachment H to Decl. of Ernie Frie. The Sentencing Court further confirmed that it was his "understanding * * * that [Petitioner's] release date will be July 14 of [2001.]" Id.

On August 1, 2000, the Petitioner was transferred to a Community Corrections Center ("CCC") in Bismarck, North Dakota.[3] See, Attachment A to Decl. of Angela Buege. On August 29, 2000, while residing at the CCC, the Petitioner was charged with Insolence Towards a Staff Member, which was the result of derogatory statements he made to a member of the staff. See, Attachment B to Decl. of Angela Buege. In particular, the incident reported stated:

> On August 29, 2000 at approximately 6:45 pm the Case Manager and this writer met with resident Evans to review the memorandum from the Transitional Drug Abuse Treatment Coordinator. Resident Evans was instructed he needed to read the entire memorandum, and date and sign the memorandum acknowledging that he did receive it. Resident Evans read the first two lines of the memorandum and then stopped. He then stated, "I am not a butt kisser, you are not going to make me drink and all that sh*t." Resident Evans was given the directive three more times by the Case Manager that he needed to read the entire memorandum, and date and sign the memorandum acknowledging that he did receive it. Resident Evans stated each time "not until I talk to Mr. Acosta." Resident

[3]The Petitioner was assigned to the Community Corrections Center as part of the Residential Drug Abuse Program ("RDAP"). See, Petitioner's Memorandum, at 1. The RDAP program is provided by the BOP, pursuant to Title 18 U.S.C. §3621(b). According to that Statute, the BOP is directed to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance addiction or abuse." Title 18 U.S.C. §3621(b). The program is "a course of individual and group activities provided by a team of drug abuse treatment specialists and the drug abuse treatment coordinator in a treatment unit set apart from the general prison population, lasting a minimum of 500 hours over a six to twelve-month period." 28 C.F.R. §550.56.

> Evans asked to be assigned a new Case Manager. The Case Manager informed resident Evans she would remain his Case Manager. Resident Evans then stated, "You're out in f**king left field, you're playing in the f**king little league."

See, Attachment B to Decl. of Angela Buege.[4]

On August 30, 2000, the Petitioner was provided notice of the charge, and advised of his rights before the Center Discipline Committee ("CDC"). See, Attachment C to Decl. of Angela Buege. The Petitioner requested that a staff representative appear on his behalf at the Hearing. See, Attachments C and D to Decl. of Angela Buege.

The Hearing was held on September 5, 2000. See, Attachment E to Decl. of Angela Buege. Both the Petitioner, and a staff representative were present, and the Petitioner made a statement. Id. No witnesses were called. Id. At the conclusion of the Hearing, the matter was referred to the Discipline Hearing Officer ("DHO"), with a recommendation that the Petitioner be at least temporarily

---

[4]The Petitioner's actions violated the Centre Residential Services Contract he signed on August 1, 2000, which provided as follows:

> Residents will follow directions of staff members. If a resident feels he or she is being treated unfairly, a written complaint should be filed immediately with the Program Manager. * * * Residents will at no time use abusive language or an abusive manner with a staff member or other residents.

See, Attachment B to Decl. of Angela Buege.

removed to a more structured setting, and that he lose 10% of allowable good conduct time. Id. On September 13, 2000, the DHO found that the Petitioner committed the alleged act. See, Attachment F to Decl. of Angela Buege. Consequently, the DHO disallowed 11 days of available good conduct time (25%), and recommended a disciplinary transfer. Id.

The Petitioner has now filed this Petition for a Writ of Habeas Corpus, under Section 2241, contending that his previously awarded jail credit was revoked, by the October of 2000 recalculation, without cause and without a due process Hearing. He also contends that, in regard to the incident of insolence in the CCC, he did not receive a Hearing before the DHO, which violated his right to due process.

III. Discussion

A. Standard of Review. The Fifth Amendment prohibits the Federal Government from depriving a person of life, liberty, or property without the due process of law. While it is true that the constitutional protections, that are encompassed by the due process clause, do not abate at the time of imprisonment, see, Hudson v. Palmer, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring), it is also true that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."

Sandin v. Conner, 515 U.S. 472, 485 (1995), quoting Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977), quoting in turn Price v. Johnston, 334 U.S. 266, 285 (1948).

Although prison disciplinary proceedings often implicate liberty interests, they are not criminal Trials and, therefore, they do not involve the full panoply of procedural and substantive protections that are available in criminal proceedings. See, Wolff v. McDonnell, 418 U.S. 539, 567-68 (1974). Nevertheless, in Wolff, the Supreme Court enumerated the minimum due process requirements of a prison disciplinary proceeding as follows:

> 1. Written notice of the claimed violation must be given to the prisoner at least 24 hours prior to the hearing;
>
> 2. A written statement must be compiled by the factfinder describing the evidence relied upon and the reasons for the findings and disciplinary action;
>
> 3. The prisoner should be permitted to call witnesses and to present evidence in defense of the charges, unless doing so would jeopardize institutional safety or correctional goals; and
>
> 4. Where the inmate is illiterate, or the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

Id. at 563-70.

Beyond these procedural due process considerations, the Supreme Court has determined that, in order to comply with constitutional due process, at least "some evidence" must support the finding of a disciplinary sanction. See, Superintendent v. Hill, 472 U.S. 445, 455 (1985). As explained by the Court:

> This standard is met if there is some evidence from which the conclusion of the administrative tribunal could be deduced. * * * Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455; see also, Goff v. Dailey, 991 F.2d 1437, 1440 (8th Cir. 1993).

B. Legal Analysis.

1. The Computation of the Petitioner's Sentence. The Petitioner contends that his initial projected release date was January 28, 2001, but that, after he returned from the CCC, his release date was modified, without due process of law, to July 14, 2001. While there is a printout, submitted by the Petitioner, which places his release date at January 28, 2001, this calculation was clearly mistaken. The Petitioner was given credit for 181 days, for time he spend in State custody, after his arrest on the Federal offense, and which had not been counted toward any other

sentence. This credit is in accordance with Title 18 U.S.C. §3585(b), which provides as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences --
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

Id.; see also, Moreland v. United States, 968 F.2d 655, 657 (8th Cir. 1992).

Moreover, his sentence was reduced, in August of 1998, to time served, plus 48 months. The BOP then recalculated his sentence, taking into account the time he had served, from September 30, 1994 -- the day the sentence was imposed -- to July 31, 1998 -- the day before the reduced sentence took effect. All totaled, the Petitioner received 1582 days of credit. See, Attachment F to Decl. of Ernie Frie. Thus, other then the erroneous release date, which was corrected in October of 2000, the Petitioner has not shown that his recalculated release date is in error.

We also note that the BOP sought clarification on the Petitioner's sentencing, on November 20, 2000. The Petitioner also appears to have sought clarification, as there is a letter from the

Sentencing Court, to the Petitioner, stating that the Petitioner "will serve a total of seven years and two months." See, Attachment H to Decl. of Ernie Frie. The Sentencing Judge also stated that it was his "understanding that * * * [Petitioner's] release date will be July 14 of [2001]." Id. There is no indication by the Sentencing Court that the Petitioner's sentence was wrongly calculated. Thus, as we believe that the Petitioner has received all the credit that was due to him, and that his projected release date is correctly calculated as July 14, 2001, his assertion that his credit was revoked, without due process of law, must be rejected.

2. The Disciplinary Hearing. The Petitioner next contends that his loss of 11 days good time credit, after having been cited for insolence, violated his right to due process, because he did not receive a Hearing before the DHO. After reviewing the Record, in light of the Petitioner's asserted due process violations, we believe that Petitioner was provided adequate procedural due process protections, which complied with Wolff v. McDonnell, supra. First, he was given written notice of the charge, in the form of an incident report, well in excess of 24 hours prior to his appearance before the DHO. See, Attachment C to Decl. of Angela Buege. He was also afforded the opportunity, before the CDC, to challenge the alleged violation, to present evidence, and to call

witnesses -- although none of the witnesses he wished to call were called as they were all character witnesses, and had no input on the incident report itself. See, Attachment E to Decl. of Angela Buege. He was also allowed to have a representative -- a staff member -- help him with his defense, and that representative appeared at the Hearing. See, Attachments C, D, and E to Decl. of Angela Buege.

Further, there is "some evidence" in the Record which would allow the CDC to conclude that the Petitioner committed the offense of insolence toward a staff member. The incident report recounted the circumstances which lead up to the incident, and the language that the Petitioner used with the staff member. Further, the Residential Specialist, to whom the inmate delivered the incident report, on August 30, 2000, provided the following recitation of the inmate's statement and demeanor:

> When this writer asked for a statement from Inmate Evans, he submitted the following: 'There is no incident! I said 'This is f**cking unreal, I don't believe this s**t!' 'This is the only bad s**t I said.' 'It is your word against mine, if you want to put me in prison, put me in prison.' 'I am done talkin.' Steven then added to this writers notes, I have a good attitude, I am smiling. Period.

See, Attachment B to Decl. of Angela Beuge.

Although the Petitioner denied, at the Hearing, making the statements documented in the incident report, we believe there was "some

evidence" to allow the CDC to conclude that the Petitioner committed the offense of which he was charged -- insolence towards a staff member.

The Petitioner's final argument is that he was not provided a Hearing before the DHO, although he has provided no authority for the proposition that the Hearing must be held before the DHO. While the Hearing was held before the CDC, rather than the DHO, such a procedure is in compliance with BOP Program Statement 5270.07. According to P.S. 5270.07, a CCC has the authority to discipline an individual, but it must follow the BOP policy and procedures. See, Attachment H to Decl. of Angela Buege. "In contract CCCs, Community Corrections Managers have the authority to take disciplinary action as specified in the Community Corrections Manual." Id. Moreover, the Community Corrections Manual allows the CCC to discipline inmates, as long as they follow BOP procedures. See, Attachment G to Decl. of Angela Buege. Those procedures require that once the Hearing is held by the CDC, the case is for-warded to a DHO for final action. Id. Thus, while the Petitioner did not appear before the DHO, he did have a Hearing before the CDC, which complied with Wolff.

The Petitioner has not provided any authority that suggests that the procedure used by the BOP violated due process, nor have we been able to find any. In contrast, at least one Court has held

that this procedure does not violate a Petitioner's right to due process, as the Hearing provided by the CDC complies with Wolff. See, Ramos v. Gilkey, 1997 WL 201566 at *3 (N.D. Ill. April 17, 1997). We agree. In the final analysis, the Petitioner was provided the process accorded to him by Wolff and, having found no due process violations, we recommend that his Petition for a Writ of Habeas Corpus be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be denied.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 9, 2001,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.

Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 9, 2001**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.